IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 1939 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| JAMES BURSCH, MARK WRASMAN, ) | |
| AND LAURA WRASMAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

The United States of America ("Government"), on behalf of the Small Business Administration ("SBA"), filed this lawsuit against James Bursch, Mark Wrasman, and Laura Wrasman (collectively "Defendants") as guarantors of a loan made pursuant to the Small Business Act, 15 U.S.C. § 631 *et seq.*, to Silent W. Properties, LLC ("Silent W. Properties"). The Government alleges that the loan was defaulted and seeks the principal sum of $376,993.86 plus interest. The Government now moves for summary judgment against the three Defendants jointly and severally. (Dkt. 34). For the reasons discussed below, the motion is granted.

**BACKGROUND**

For the purposes of this motion, the following facts are viewed in the light most favorable to Defendants—the non-movants here—and all reasonable inferences are drawn in their favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court takes the relevant facts primarily from the Government's and Bursch's Local Rule 56.1 Statement of Uncontested Facts and supporting exhibits: (Dkt. 36), (Dkt. 38), (Dkt. 39), (Dkt.

42).[1]  Mark Wrasman and Laura Wrasman failed to respond to the Government's Local Rule 56.1 Statement of Uncontested Facts, and therefore they admit all facts set forth therein.  *See* Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) (district court properly deemed admitted facts asserted by defendants as penalty for non-movant's noncompliance with Local Rule 56.1); *Mintjal v. Prof'l Benefit Trust*, 146 F. Supp. 3d 981, 985 (N.D. Ill. 2015) ("the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted") (internal quotation marks and citation omitted).  The facts set forth are undisputed, unless otherwise noted.

Mark Wrasman owns Keystroke Graphics, a graphic design, printing, and promotional products business.  (Dkt. 39) at ¶ 1.  Laura Wrasman is the sole owner of Silent W Communications, Inc., a business that publishes a wedding magazine and website for the Chicagoland market.  *Id*. at ¶ 2.  The Wrasmans sought to purchase property located at 762 Shoreline Drive in Aurora, Illinois, in which to operate both businesses.  *Id*. at ¶ 5.  The Wrasmans approached Bursch, a business client of Mark Wrasman, to become a passive investor in the purchase.  *Id*. at ¶¶ 3–4.  The Defendants formed Silent W. Properties, LLC to hold the property and in which the Wrasmans were managers and Bursch was a silent investor.[2]  In order

---

[1] The Government improperly filed a Statement of Additional Uncontested Facts in addition to its reply to Bursch's statement of facts.  (Dkt. 41).  Pursuant to Local Rule 56.1, each party may file one statement of uncontested facts and one reply to the opposing party's statement.  Therefore, the Court has disregarded the Government's filing at Dkt. 41 and the attached exhibits for purposes of this opinion.

[2] *See* (Dkt. 39) at Ex. D (M. Wrasman's Responses to Written Interrogatories) at ¶¶ 2, 4; Ex. E (L. Wrasman's Responses to Written Interrogatories), at ¶¶ 2, 4.  According to their answers to interrogatories, the Wrasmans each owned 37.5% of Silent W Properties.  *Id*. at Ex. D, ¶2; Ex. E ,¶2.

to purchase the building, Silent W. Properties secured two loans. The first, not at issue in this case, was from a private banking institution, Pullman Bank (though sometimes referred to as Regency Bank by Defendant Bursch (*see, e.g.*, (Dkt. 39) at Ex. H (J. Bursch Dep.) at 13:8, 31:22)) for approximately $500,000. (Dkt. 39) at ¶¶ 6, 8. There is no dispute that Bursch agreed to guarantee the Pullman loan. *Id.* The second loan, at issue here, was made on February 11, 2005 by the Small Business Growth Corporation ("Growth")—a certified Illinois development company licensed by the SBA to work with borrowers and their banks to package, process, and services SBA loans—pursuant to the Small Business Act ("SBA loan").[3] (Dkt. 36) at ¶ 7. Silent W. Properties executed a written 20-year term promissory note ("Note") dated February 11, 2005, in the principal sum of $475,000. *Id.* at ¶ 7; *see* (Dkt. 36-1) at 8–12 (U.S. SBA Note dated Feb. 11, 2005). All three Defendants signed the Note for Silent W. Properties, although Bursch does not recall signing it or, as discussed below, any SBA forms. *See* (Dkt. 36-1) at 12. Mark Wrasman and Laura Wrasman personally unconditionally guaranteed payment of the Note by separate written guarantees dated February 11, 2005. (Dkt. 36) at ¶¶ 11, 13; *see* (Dkt. 36-1) at 19–22 (U.S. SBA Unconditional Guarantee signed by Mark Wrasman), 24–27 (U.S. SBA Unconditional Guarantee signed by Laura Wrasman). The execution of Mark Wrasman's and Laura Wrasman's guarantees were witnessed and notarized by R. Bruce Patterson, an Illinois-licensed notary public and attorney who was employed by Growth and who worked out of Springfield, Illinois. (Dkt. 36) at ¶¶ 12, 14.

---

This leads to the inference that Bursch owned the remaining 25% of the company, though he testified that he owned somewhere between 20–22%. (Dkt. 39) at Ex. H (J. Bursch Dep.) at 16:2–12.

[3] In its Complaint, the Government alleges that the SBA loan was made to Silent W. Communications, Inc., the company owned by Laura Wrasman. (Dkt. 1) at ¶ 8. The Note is attached as Exhibit A to the Complaint, which lists the "Borrower" as Silent W. Properties, LLC. (Dkt. 1-3) at 3. The Government appears to have corrected this mistake in its Rule 56.1 Statement of Facts, (Dkt. 36) at ¶ 7 (describing the loan to "Silent W. Properties, LLC"), and the Defendants do not contend otherwise.

As for Bursch, the Government contends that he also provided an unconditional guarantee on the note and that his guarantee was notarized by Patterson. *Id.* at ¶¶ 8–9; *see* (Dkt. 36-1) at 14–17 (U.S. SBA Unconditional Guarantee). Busch, however, only recalls completing the loan application for Pullman Bank, but not for the SBA. (Dkt. 39) at ¶ 8. Accordingly, he denies any memory of guaranteeing the SBA Note, but he has stated in his deposition that the signature on the guarantee "looks like [his] signature." *Id.* at ¶ 10; (Dkt. 36-1) at 33 (J. Bursch Dep.) at 22:17–23:12.

As relevant, the guarantees signed by the Wrasmans and allegedly signed by Bursch waived certain defenses to enforcement of the Note:

> C. Guarantor waives defenses based upon any claim that:
> 1) Lender failed to obtain any guarantee;
> 2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
> 3) Lender or others improperly valued or inspected the Collateral;
> 4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
> 5) Lender impaired the Collateral;
> 6) Lender did not dispose of any of the Collateral;
> 7) Lender did not conduct a commercial reasonable sale;
> 8) Lender did not obtain the fair market value of the Collateral;
> 9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
> 10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
> 11) Lender made errors or omissions in Loan Documents or administration of the Loan;
> 12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
> 13) Lender impaired Guarantor's suretyship rights;
> 14) Lender modified the Note terms, other than to increase the amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
> 15) Borrower has avoided liability on the Note; or

> 16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

*See* (Dkt. 36-1) at 15–16 (J. Bursch Guarantee), 20–21 (M. Wrasman Guarantee), 25–26 (L. Wrasman Guarantee).

The same day the Note was executed, Growth assigned it to the SBA. (Dkt. 36-1) at 29 (Assignment of Guarantees dated Feb. 11, 2005). Growth then made the loan on or about April 20, 2007. The last payment made by Silent W. Properties was sometime in 2012. *See* (Dkt. 35) at 2 ("The last payment on the Note was processed on August April [sic] 26, 2012."). Demand letters were sent to all guarantors on December 6, 2013 and again on February 10, 2014 (*see* (Dkt. 35) at 4), but no payments were made. (Dkt. 36) at ¶ 18. According to the Wrasmans, Silent W. Properties was dissolved by the State of Illinois in 2014. *See, e.g.*, (Dkt. 39) at Ex. D, ¶¶ 7, 9. On February 4, 2016, the Government filed this lawsuit seeking to enforce the Note. On April 4, 2016, Bursch filed an answer, affirmative defenses, and crossclaim against Mark and Laura Wrasman. *See* (Dkt. 4). Bursch's crossclaim requests enforcement of an indemnification agreement between Bursch and the Wrasmans, in which the Wrasmans agreed "that they will jointly and severally indemnify Bursch for any claims related to the SBA loan . . . ." *See* (Dkt. 4) at 12 (April 16, 2015 Agreement between Silent W. Properties, M. Wrasman, L. Wrasman, and J. Bursch). The Government has moved for summary judgment against all Defendants; only Bursch has responded. No party has moved for summary judgment on Bursch's cross claim.

## STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, here Defendants. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But Defendants are "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 2017 WL 3753996, at *3 (7th Cir. Aug. 31, 2017) (citation and quotation marks omitted).

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. 252.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d

6

1099, 1104 (7th Cir. 2008). Although a failure to timely respond to the moving party's Local Rule 56.1 statement results in "deeming admitted" the moving party's factual statements, a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 does not, of course, automatically result in judgment for the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden of persuasion remains on the moving party to show that it is entitled to judgment as a matter of law.

## DISCUSSION

A.     **Mark Wrasman and Laura Wrasman**

The issue for the Wrasmans is straightforward: they failed to respond to the motion and their attorney often failed to appear and respond to most motions before the Court. Mark Wrasman and Laura Wrasman are former spouses ((Dkt. 39) at Ex. D, ¶ 5; Ex. E, ¶ 5), and are represented in this action by the same counsel, Kevin Gallaher. *See, e.g.*, (Dkt. 9) at 1, 9; (Dkt. 10) at 1, 9. On April 22, 2016, even though represented by the same attorney, the Wrasmans filed separate Answers and Affirmative Defenses. *See* (Dkts. 9, 10). On July 26, 2016, the Government moved to compel discovery responses from the Wrasmans (Dkt. 12), and Gallaher failed to appear before the Court on that motion on August 16, 2016. (Dkt. 14). Gallaher also failed to appear for Mr. Peterson's deposition on October 21, 2016 (*see* (Dkt. 39) at Ex. I (R. Patterson Dep.) at 4:22–5:3), he failed to appear before the Court for a November 14, 2016 status hearing (Dkt. 16), and he did not participate in two conference calls to discuss potential settlement before Magistrate Judge Finnegan on March 6 and 8, 2017. (Dkts. 27, 28). On May 3, 2017, the Government moved for summary judgment against each of the three Defendants jointly and severally. (Dkt. 35) at 6. Defendants were given until June 5, 2017 to file responses. (Dkts. 29, 33). The Wrasmans failed to respond to the Government's motion, to file any further

documents with the Court, or to communicate with the Court at any point. Certainly at this point, the Government could have sought a default order against the Wrasmans for failure to follow two courts' orders and participate in the discovery process. Nevertheless, the Government moved for summary judgment and once again failed to receive a response.

Attached to the Government's Complaint are documents titled "U.S. Small Business Administration Unconditional Guarantee" that are purportedly executed by Mark Wrasman and Laura Wrasman and notarized by R. Bruce Patterson. (Dkt. 1–3) at Ex. D & Ex. E. One of the few court-ordered responses filed by the Wrasmans were their answers to the Complaint in which they both admit that "[o]n or about April 20, 2007, Small Business Growth Corporation made a loan pursuant to the Small Business Act . . . to Silent W. Communications, Inc." and that "Silent W. Communications, Inc. made, executed and delivered . . . its written promissory note ("Note") dated February 11, 2005, in the principal sum of $475,000."[4] (Dkt. 9) at ¶ 22; (Dkt. 10) at ¶ 15. They deny, however, that they executed unconditional personal guarantees on the loan. (Dkt. 9) at ¶ 23; (Dkt. 10) at ¶ 16. The Government restated in its Statement of Uncontested Facts that Mark Wrasman and Laura Wrasman executed unconditional guarantees for the Silent W. Properties loan on February 11, 2005 and once more attached copies of the guarantees. (Dkt. 36) at ¶¶ 11–14; (Dkt. 36-1) at 20–21 (M. Wrasman Guarantee), 25–26 (L. Wrasman Guarantee). This time, at their put up or shut up moment, sneither Mark nor Laura Wrasman responded to the Government's Rule 56.1 Statement of Uncontested Facts. They therefore have failed to establish that a genuine issue of material fact exists concerning the Government's entitlement to judgment against them. *See* Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 Amendment (noting that the 1963 amendments were intended to reverse "Third Circuit doctrine, which permit[ted] the pleadings themselves to stand in the way of granting an otherwise justified summary

---

[4] *See supra* note 2. The loan was in fact made to Silent W. Properties not Silent W. Communications, Inc.

judgment" because "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial"); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citing favorably the Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)); *see also e.g.Donovan v. Quade*, 2009 WL 3380998, at *7 (N.D. Ill. Oct. 15, 2009) (noting a nonmovant "cannot point to unsworn, conclusory denials found in her answer to the counterclaim to establish a disputed fact at summary judgment. Rather, [the nonmovant] is required to come forward with 'specific facts showing a genuine issue for trial'") (citation omitted).

The Wrasmans managed to raise a number of affirmative defenses in their answers; namely, that the Government's claims are barred by the statute of limitations, it failed to mitigate its damages, it failed to seek adjudication of its interest in the collateral through the foreclosure of the collateral, and that it allowed the collateral to be impaired by failing to seek adjudication of its interest in the collateral through the foreclosure of the collateral. (Dkt. 9) at 8; (Dkt. 10) at 8. But of course, when it came to summary judgment, none of this was addressed and neither rebutted that the date of default was in 2012 and the first demand letter was sent December 6, 2013. (Dkt. 35) at 4. The Court, of course, must still determine if the Government is correct as a matter of law.

Under 28 U.S.C. § 2415(a), the statute of limitations expires December 6, 2019, six years from the date of demand. The complaint in this matter was filed on February 4, 2016. *See* (Dkt. 1). Aside from being supported by any fact in response to summary judgment, the Wrasmans' statute of limitations affirmative defense is also without merit. The Government also successfully set forth that the Wrasmans specifically waived their right to raise the remaining affirmative defenses by virtue of the terms of the loan guarantee. (Dkt. 35) at 2–5; (Dkt. 36-1) at

9

19–22 (M. Wrasman Unconditional Guarantee), 24–27 (L. Wrasman Unconditional Guarantee); *see also United States v. Meadors*, 753 F.2d 590, 594 (7th Cir. 1985) (finding "SBA guarantors are unconditional or absolute guarantors, and federal courts have held that, by signing the guaranty, they waive" the right to the rights to notice, to a reasonable disposition of the collateral, and protection against negligent impairment).

In sum, Growth made a loan to Silent W. Properties and to induce Growth to make the loan and in consideration for the loan, Mark Wrasman and Laura Wrasman unconditionally guaranteed payment of the loan. Growth endorsed and assigned the loan together with the guarantees to the SBA, and the SBA is the present owner and holder. The Government has demonstrated that it suffered damages as a result of the Defendants' actions, namely by presenting unrebutted evidence that: (1) Silent W. Properties defaulted on its loan obligations, (2) at least two demands for payment were issued to Mark and Laura Wrasman, and (3) that no payment has been made since those demands. Summary judgment in favor of the Government is granted against Defendants Mark Wrasman and Laura Wrasman.

**B.     James Bursch**

As for Defendant Bursch, he responded to the motion for summary judgment but merely stated that he did not know if he signed the Note guarantee. He believes that this properly raises a material issue of fact requiring a trial to determine the truth. Yet, his statement is much less direct than he argues. In support of this position, Bursch attacks the credibility of R. Bruce Patterson, an attorney for Growth and a notary public, who notarized all three Defendants' guarantees. Further, Bursch contends that no witness, other than Patterson, will testify that he witnessed Bursch sign the guarantee. *Id*. at 6.

Bursch falls short from testifying that he did not sign the guarantee; instead, he testified that the signature on the Bursch Guaranty 'looks like my signature.' (Dkt. 36) at ¶ 10. Although Bursch claims that he "testified in his deposition that he is not familiar with the purported guarantee *and did not sign it*, and has no recollection of signing any SBA documents at all," *id*. (emphasis added), this is the exact testimony:

> Q: And then I'm going to move to what I've labeled Bursch 4, and this is a copy of the purported SBA guarantee that would have accompanied this loan.
> Are you familiar with this document?
>
> **A: No.**
>
> Q: Did you sign this document?
>
> **A: Not to my knowledge.**
>
> Q: When you say "not to your knowledge," are you saying you have no recollection of signing the document?
>
> **A: I have no recollection of signing the document**
>
> Q: Okay.
> Do you affirmatively deny signing the document?
>
> **A: I mean, it looks like my signature, but I don't remember signing an SBA document at all**.

(Dkt. 39) at Ex. H (J. Bursch Dep.) at 22:21–23:12. He was asked directly whether he affirmatively denied signing the guarantee and he gave the qualified answer that "it looks like my signature, but I don't remember signing an SBA document at all." *Id.* at 22:10–12. Bursch in fact never *denied* signing the SBA guarantee.

To muddy the water a tad more, Bursch testified at his deposition that he recalled attending a meeting on February 11, 2005 in Naperville, the same day all three Defendants' guarantees are dated. *Id.* at 41:17–24, 42:1–21; *see* (Dkt. 36-1) at Exs. 3–5 (J. Bursch, M. Wrasman, and L. Wrasman Guarantees). Again, although he said he does not recall signing any SBA loan documents specifically, he actually does remember reading and signing several documents in general:

> Q: So whatever documents you signed in front of a notary, you're sure that it didn't have anything that said SBA like it does on this?
>
> **A: No. What I recall going through, we were -- it was just like the typical signing. We went through -- there were a lot of signature pages and, you know, a lot of reading through of documents.**
>
> Q: You don't remember seeing anything that has SBA on it like it does prominently on the first page of the guarantee?
>
> **A: No.**

(Dkt. 39) at Ex. H (J. Bursch Dep.) at 43:3–15. When given the opportunity to speculate about the possibility his signature was forged or some other malfeasance was at play, Bursch responded:

> Q. Okay. Do you have – if this were not your signature, do you have any theories as to whom may have signed this?
>
> …
>
> **A: I don't have a clue on how. You know, unless the page was given to me without knowing it was an SBA, just the signed document page, is the only way I can think of it.**

*Id.* at 23:21–24, 24:5–9. Bursch actually recognizes the very real possibility that he signed the SBA loan guarantee without realizing what the document was or its import. Taken together with his other testimony that he was at the meeting on February 11, 2005 during which he executed several documents, and that the signature on the SBA loan guarantee looked like his, but that he did not remember ever signing an SBA loan guarantee, all support that Bursch actually signed the SBA loan guarantee, even if unwittingly. But more importantly, his conjecture fails to rebut the definitive statement that he did sign the guarantee.

Bursch's effort to create a factual issue regarding his signature on the guarantee fails. *See, e.g.*, *GE Franchise Fin. Commercial LLC v. Wormsby*, 2016 WL 4181192, at *4 (D. Ariz. Aug. 8, 2016) ("To allow [defendant] to avoid summary judgment without actually denying authenticity would effectively allow any loan guarantor to avoid summary judgment despite a signed agreement. That cannot be right. Defeating summary judgment does not require much,

but it requires more than some metaphysical doubt as to the material facts.") (internal citations omitted); *Wesco Distribution, Inc. v. Anshelewitz*, 2008 WL 2775005, at *7 (S.D.N.Y. July 16, 2008) ("[Defendant's] inability to confirm or deny his signature on the guaranty does not, in the face of plaintiff's evidence, create a genuine issue of fact for trial."); *Lone Star Indus., Inc. v. Nelstad Material Corp.*, 811 F. Supp. 147, 149 (S.D.N.Y. 1993) ("[Defendant] argues that his failure to recall signing the note creates an issue of fact barring summary judgment to [plaintiff] . . . . [There is] no genuine issue of material fact, since [defendant], who does not claim inability to recognize his own handwriting, concedes that the signature on the guarantee resembles his signature and does not deny having signed the document."); *cf. Leser v. U.S. Bank Nat. Ass'n*, 2012 WL 4472025, at *7 (E.D.N.Y. Sept. 25, 2012) (finding an issue of material fact because both parties submitted opposing handwriting expert affidavits, which, combined with an averment of forgery, *was* sufficient to rebut the presumption of authenticity and to raise an issue of fact for the fact-finder). Bursch fails to cite a single authority for the proposition that failing to recall signing a document is sufficient to creating an issue of material fact as to whether he actually signed in order to avoid summary judgment. Rather, Bursch's position rests entirely on the conclusory statement that he did not sign the guarantee, when in fact his own deposition testimony is inconsistent with that argument and cannot support such a claim. Even viewing Bursch's testimony in the light most favorable to him, Bursch simply does not remember signing the SBA loan guarantee. At best, this testimony only creates some "metaphysical doubt" as to the material facts, *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; it is not sufficient to "convince a trier of fact to accept [Bursch's] version of events." *Steen*, 486 F.3d at 1022.[5]

---

[5] Moreover, although Bursch testified that he does not remember signing the SBA loan guarantee or any SBA document, the Agreement attached as Exhibit A to Bursch's answer, affirmative defenses, and cross claim expressly contemplates indemnification of Bursch by both Wrasmans for "any claims related to the SBA loan." (Dkt. 4) at 11-12 (April 16, 2015 Agreement). This exhibit, which was put in the record

Although the Court cannot condone what appears to be a rather sloppy notary practice as to the way in which R. Bruce Patterson, Growth's lawyer and the notary public who affixed his notary seal on each of the Defendants' guaranties (but not to the assignment of the Note to SBA) operated, Bursch cannot rely on his testimony to create a factual dispute because even Patterson's testimony fails to support that Bursch did not sign. The practice, namely, that it was Patterson's regular course of business to notarize SBA loan documents after observing the person sign in his presence and then returning to his office where he would actually stamp and date the document for notary purposes, is certainly not in keeping with the directions of Illinois Secretary of State, who states that for proper and safe notarization is to "not notarize a signature unless the signer is present at the time of notarization." *Illinois Notary Public Handbook*, at 2.[6] And although Patterson testified that he had no specific recollection of notarizing Bursch's guarantee. (Dkt. 39) at Ex. I (R. Patterson Dep.) at 24:4–9. This does not come as a surprise: Patterson sat for his deposition in October 2016, over eleven years after he purportedly witnessed and notarized the guarantee. While the failure of a notary public to recall notarizing a specific document does not alone rebut the presumption of authenticity of a notarized document, *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 295 (7th Cir. 1994) ("only a rare individual can remember every person with whom the individual has a brief encounter. Indeed, that is the basic reason for recognizing a presumption of validity for a notary's certificate in the first place"), the purpose of making it a habit of affixing the notary seal in the presence of the signatory is to avoid the issue raised here by Bursch. *See, e.g.*, Fed. R. Evid. 406 ("Evidence of a person's habit

---

before the Court by Bursch, reflects his knowledge of the SBA loan and his awareness of his potential liability in connection with the loan. Again, Bursch's testimony that he does not remember signing the SBA guarantee does not create a factual dispute for a jury, particularly in light of Bursch's testimony that the signature looks like his and when viewed along with the April 16, 2015 Agreement.

[6] Available at http://www.cyberdriveillinois.com/publications/pdf_publications/ipub16.pdf (last visited March 26, 2018).

. . . may be admitted to prove that on a particular occasion the person…acted in accordance with the habit . . . . The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness"). More importantly, although his practice was not comporting with best practices, his practice was not one in which he would fail to record a signature after observing it; in fact, he observed the signature in person and then added the stamp and his notary date after the person left in the interest of not delaying the process. Therefore, even his practice, athough not condoned by the Court, fails to negate that Bursch did not sign the Note. *See Butler*, 41 F.3d at 295 (Although notary's statement suggests that [his] certificate may be invalid in some cases, it does not provide the clear and convincing evidence required to prove that the certificate was false). The same conclusion is reached here because Bursch, when given the chance, did not affirmatively deny that he signed the SBA loan guarantee or present any evidence that would cast doubt on his signature. Peterson's practice also was not one where he notarized documents that were not signed in his presence; rather, he notarized documents from persons who did sign in his presence—he just added his notary seal and date later after observing the signature in person. Bursch, or any defendant for that matter, cannot avoid summary judgment simply by claiming he does not recall signing a personal loan guarantee.

Accordingly, summary judgment in favor of the Government is granted against Bursch.

**C.     Damages**

As a final note, according to the Court's calculations, the Note has an outstanding balance of $492,779.25, comprised of a principal balance of $376,993.86 and accrued interest totaling

$115,785.39, calculated at the rate of $53.53 per day from the date of default (April 26, 2012) until the date of this order (March 28, 2018) (totaling 2,163 days).[7]

## CONCLUSION

For the reasons stated above, the Court grants the Government's motion for summary judgment. (Dkt. 34). The matter is not closed, however, because Bursch's cross claim remains pending. Accordingly, the matter is set for status on the cross claim on April 12, 2018 at 9:00 a.m.

Date: March 28, 2018

Hon. Virginia M. Kendall
United States District Judge

---

[7] This amount is $1,990.02 less than the calculation provided by the Government, or approximately thirty-seven (37) fewer days of accrued interest at $53.53 per day. Indeed, the $71,364.90 presented by the Government as the interest accrued through November 13, 2015 contemplates more than 1,333 days in default, or since March 19, 2012. Even using the earlier of the Government's "last payment" dates ("August April [sic] 26, 2012") and assuming for the sake of this calculation—and in the absence of any challenge by the Defendants—that one of these dates indicates the date of *default*, the calculation includes thirty-seven too many days. The Court reached the same result—thirty-seven too many days—using the Government's calculation of $100,112.19 in accrued interest through May 3, 2017. (Dkt. 35) at 6.